(C.D. 2845)

A. L. ERLANGER CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 8, 1966)

*John D. Rode* for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This case presents to the court for determination the proper classification of certain perlon (nylon) staple fiber. The collector of customs classified this merchandise under the provisions of paragraph 1302, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, by virtue of the similitude clause contained in paragraph 1559, Tariff Act of 1930. At the trial and for the reasons set forth, *infra*, the classification was abandoned and defendant urges that the proper classification is under the provisions of paragraph 1201, Tariff Act of 1930, by virtue of the similitude clause contained in paragraph 1559, *supra*.

Plaintiff contends the merchandise is properly dutiable at 10 per centum ad valorem under the provisions of paragraph 1558, Tariff Act of 1930, as modified by said Torquay protocol, *supra*, as made effective by T.D. 52827, as articles manufactured in whole or in part, not spe-

cially provided for or, alternatively, as cotton under the provisions of paragraph 783, Tariff Act of 1930, as modified by said Torquay protocol, *supra*, by virtue of the similitude clause under paragraph 1559, *supra*.

The pertinent portions of the statutes involved read as follows:

Paragraph 1201, Tariff Act of 1930:

Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, and silk noils exceeding two inches in length; all the foregoing, if not twisted or spun, 35 per centum ad valorem.

Paragraph 1559, Tariff Act of 1930:

That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; * * * If two or more rates of duty shall be applicable to any imported article, it shall be subject to duty at the highest of such rates.

Paragraph 1558, Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52827:

Articles manufactured, in whole or in part, not specially provided for * * *_____ 10% ad val.

Paragraph 783, Tariff Act of 1930, as modified by T.D. 52739:

Cotton:
 Having a staple 1⅛ or more but under 1¹¹⁄₁₆ inches
 long _____ 3½¢ per lb.
 Having a staple 1¹¹⁄₁₆ inches or more long_____ 1¾¢ per lb.

The record herein consists of the testimony of three witnesses called on behalf of plaintiff and two witnesses called on behalf of defendant. The record in the case of *A. L. Erlanger Co., Inc.* v. *United States*, 50 Cust. Ct. 74, C.D. 2392, affirmed, 51 CCPA 51, C.A.D. 836, with the exception of paragraph 3 of the stipulation of fact entered into in that case, was incorporated herein. In addition thereto, three exhibits were received on behalf of plaintiff and three exhibits were received on behalf of defendant. Plaintiff's illustrative exhibit 1 is nylon staple fiber, plaintiff's exhibit 2 is raw American cotton, and plaintiff's exhibit 3 consists of strands of silk. Defendant's exhibit A consists of strands of silk and defendant's exhibits B and C are outlines of the qualifications of the two witnesses called on its behalf.

The classification of the imported perlon staple fiber under the pro-

visions of paragraph 1302, *supra*, by similitude, was abandoned by counsel for defendant by virtue of the decision in *United States* v. *Steinberg Bros.*, 47 CCPA 47, C.A.D. 727. The reasoning as to why the classification is erroneous is clearly set forth not only in the *Steinberg* case, *supra*, but also in the *Erlanger* case, *supra*. The defendant, shorn of its presumption of correctness, contends herein that the proper classification of the imported staple fiber is under the silk schedule, paragraph 1201, *supra*, by virtue of the similitude clause. The issue thus presented is whether the imported staple fiber is, for tariff purposes, cotton or silk by similitude or a nonenumerated article.

It is basic in this field of jurisprudence that, before the similitude clause can be utilized, it must be established that the article is not denominatively provided for. Insofar as classification under the provisions of paragraph 1558, *supra*, is concerned, it must be established that the imported articles are not enumerated or dutiable by similitude. *Package Machinery Co.* v. *United States*, 41 CCPA 63, C.A.D. 530; *Ringk & Co.* v. *United States*, 13 Ct. Cust. Appls. 126, T.D. 40960; *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls. 340, T.D. 39146. Similarity under the similitude provisions of paragraph 1559 is a question of fact to be established by sufficient evidence, *Mary G. Ricks* v. *United States*, 33 CCPA 1, C.A.D. 308; *Ringk & Co.* v. *United States*, *supra*; *United States* v. *F. W. Myers & Co., Inc.*, 29 CCPA 34, C.A.D. 168, and such similarity must be proven by a showing of a substantial resemblance in any one of the four statutory characteristics. *United States* v. *Wecolite Co.*, 45 CCPA 54, C.A.D. 672. Since the importation covered herein was made prior to the amendment of paragraph 1559 (T.D. 53559) which limits such paragraph to use, we must consider all four characteristics, material, quality, texture, or use as originally provided for. It is also well established that, if a nonenumerated article resembles two or more enumerated articles, the article it most resembles is the article it is similar to for tariff purposes. The provisions of paragraph 1559, *supra*, also govern the situation where a nonenumerated article equally resembles two or more enumerated articles bearing different rates of duty. In such event, the statutory provision requires that the article be subject to duty under the enumerated provision carrying the highest rate of duty.

In view of the statutory restrictions in effect at the time of importation limiting synthetic textiles to those which are products of cellulose, the interpretation of that restriction in the *Steinberg* and *Erlanger* cases, *supra*, the fact that the merchandise at bar is noncellulosic, and the concession of defendant as to the erroneous classification, it is readily apparent that the imported merchandise is not provided for in schedule 13 of the Tariff Act of 1930. In addition thereto, a review of

the various textile sections of the tariff act establishes that perlon or nylon is not denominatively provided for in said act.

The *Ringk* case, *supra*, sets forth one of the most comprehensive considerations of the subject of similitude which, so far as is pertinent herein, reads as follows:

As to material, it is sufficient to say that gelatin is an animal product while cellophane is of vegetable origin. No reason is suggested for holding that under the circumstances of this case similitude of material is present. See in this connection, *Cone* v. *United States*, *supra*.

As to similitude of texture, we doubt if any is present in this case and do not understand the Government to so claim. No direct testimony tended to establish such similitude between gelatin and cellophane in any condition.

The derivation and meaning of the word "texture" indicates that it would naturally be more applicable to woven fabrics or textile fibers than to gelatin or cellophane. In this connection see *Pickhardt* v. *Merritt*, 132 U.S. 252 at 258; *Stratton* v. *Komada & Co.*, 148 Fed. 125; *United States* v. *Komada & Co.*, 162 Fed. 465.

As to similitude of quality, the uncontroverted evidence definitely shows the following: Cellophane will wrap more closely when used as a wrapper than will gelatin and can be used for a wet wrapper, while gelatin can not. Gelatin is soluable in water, grease, or alcohol; cellophane is not. Gelatin will crack much more easily than cellophane. Gelatin can not be embossed; cellophane can. Gelatin will not stretch; cellophane will. Cellophane in strips or sheets can be dyed; gelatin in those forms can not. Gelatin can not be sewed; cellophane can.

As indicated, *supra*, the similitude provision involved herein, as originally enacted, sets forth four characteristics which will be considered individually.

Insofar as use is concerned, we find that perlon staple fiber, raw cotton, and cut silk are all spun into a yarn for further use in the manufacture of textile products. While the record establishes that, depending upon the denier of the perlon staple fiber the end use may vary, the primary use of all three commodities is the same, to wit, manufacture into yarn. Accordingly, in our opinion, staple fiber, cotton, and silk are used for the same primary purpose.

As far as material is concerned, the record establishes that silk and perlon are protein while cotton is cellulosic. In the case of *Von Bernuth* v. *United States*, 11 Treas. Dec. 111, T.D. 27028, certain imitation silk was found to resemble silk yarn and cotton yarn in material, quality, texture, or use. The Circuit Court of Appeals, Second Circuit, therein concluded that the imitation silk being cellulosic more nearly resembled cotton yarn in respect to material than it did silk yarn. By the same token and following the rationale therein, the staple fiber involved herein and silk both being protein while cotton

being cellulosic, we find that as to material the staple fiber and silk more nearly resemble each other than staple fiber and cotton.

With respect to texture, we are of the opinion, based upon the record and visual observance and examination of the samples, that the imported staple has a closer resemblance to raw cotton than to silk.

As far as quality is concerned, the discussion in the *Ringk* case, *supra*, relative to characteristics of the article would suggest in this case a number of characteristics in which nylon resembles either silk or cotton. Some examples, although not limited thereto, are as follows:

Perlon and silk are comparable in stiffness; the color or look of perlon and silk is not similar; perlon and silk are resistant to mildew while cotton is subject to mildew; nylon will withstand more abrasion than silk, etc.

In addition to the question of what characteristics of an article are determinative of quality, as expounded in the *Ringk* case, *supra*, the appellate court in the later *Ricks* case, *supra*, made the following observation:

* * * It will be noted that in the *Ringk* case the word "quality" was apparently regarded as referring to certain characteristics, such as the fact that gelatin was soluble in water, grease, or alcohol, while cellophane was not. It is doubtful as to whether this was all that Congress meant by the word "quality," but certainly the qualities, if measured by the suggestion in the *Ringk* case, have not been shown in the instant record. It may be observed here that in the *Tower* case, *supra*, in discussing quality, relating to feedstuffs, this court stated:

> Clearly, the quality of the imported merchandise is not similar to that of bran, shorts, and the other articles named in the paragraph. It would seem to be of *higher* quality. [Italics not quoted.]

It is not illogical to conclude that in using the term "quality," Congress had in mind, at least in part, the fact that some goods might be of a low quality, that is to say, poorly and cheaply constructed, limited in usefulness, etc., as against goods of high quality, of superior workmanship, and possessed of more desirable qualities. * * *

Based upon the record and common knowledge of facts which we may take judicial notice of, we are of the opinion that there is no evidentiary basis for a holding of similitude of quality as between the imported merchandise and either raw cotton or silk.

While plaintiff has overcome the first part of its burden of establishing the classification to be erroneous, it has failed to go forward and establish by a preponderance of creditable evidence the correct classification. In order to meet this second burden of proof, plaintiff must not only affirmatively establish substantial resemblance to cotton, but it must also negate any resemblance to any other textile provided for in the tariff act such as wool, linen, etc. When and if such proof is

adduced, the defendant no longer having the protection of the presumption of correctness would likewise have to negate similarity to other textiles provided for in the tariff act and affirmatively establish substantial resemblance to silk. While defendant has attempted to affirmatively establish similitude to silk, it has not attempted to negate similitude to other textiles.

In view of the foregoing and based upon the record as made herein, it is apparent that, while some of the statutory characteristics of similitude are present as to both silk and cotton, there is insufficient evidence for the court to determine whether similitude exists for the imported staple fiber under our tariff act.

In view of this state of the record, the court may not apply the higher rate provision contained in paragraph 1559, as urged by defendant, nor the 10 percent rate claimed by plaintiff under paragraph 1558, *supra;* the reason for the latter having been discussed, *supra,* the former being applicable only if the articles equally resemble each other.

The protest is, therefore, overruled without affirming the collector's classification. Judgment will be entered accordingly.